T.C. Memo. 1996-179


UNITED STATES TAX COURT


LARICK A. HILL AND FAWNI LITTLE,
A.K.A. FAWNI HILL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2004-94.            Filed April 11, 1996.


<u>Karen L. Hawkins</u>, <u>William E. Taggart, Jr.</u> (specially recognized), and <u>Paul J. Barulich</u>, for petitioners.

<u>Bryce Kranzthor</u> and <u>Debra K. Estrem</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined that petitioners are liable for deficiencies in Federal income tax of $7,557 for 1990 and $14,314 for 1991, and penalties under section 6662 of $1,511 for 1990 and $2,863 for 1991.

After concessions,[1] we must decide whether payments by James Little to Fawni Hill from August 1, 1990, to December 31, 1991, were alimony as respondent contends, or child support or other nonalimony payments as petitioners contend. We hold that the payments were alimony.

References to petitioner are to Fawni Hill, formerly Fawni Little. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioners

Petitioners lived in Woodside, California, when they filed their petition.

Petitioner worked full time as an office manager from 1968 to 1973. She obtained a bachelor's degree at age 32. After college, she started a business not otherwise described in the record. She later worked 2 years for a space-planning firm. In

---

[1] Respondent concedes that petitioners are not liable for penalties under sec. 6662(a) for 1990 and 1991.

1988, petitioner earned $30,000. At the time of trial, she worked as an interior designer.

B.   Petitioner's Marriage to James Little

Petitioner married James Little on December 18, 1967. They had two children: Lindsey, born on August 6, 1968; and Christina, born on December 21, 1973.

James Little was chairman of the board and president of Pacific Compensation Insurance Co. (Pacific Compensation) in San Bruno, California, until November 9, 1991. He then became president and chief executive officer of Fremont Indemnity Co., which acquired Pacific Compensation. James Little earned about $230,000 in 1988 and less than $200,000 in 1989. He earned more than $450,000 from Pacific Compensation and Fremont Indemnity Co. in 1990. Fremont Indemnity Co. paid James Little about $399,000 in 1991.

C.   Petitioner's Divorce From James Little, the Marital Settlement Agreement, and the Judgment of Dissolution

In 1989, petitioner and James Little decided to end their marriage. Petitioner and James Little and their lawyers negotiated a marital support agreement. The negotiation took about 6 months. Christina lived with petitioner at that time. Petitioner and James Little agreed that they would have joint legal custody of Christina and that petitioner would have primary physical custody of her.

On November 14, 1989, petitioner and James Little and their lawyers signed a marital settlement agreement. The Superior Court for the County of San Mateo, California, issued a judgment of dissolution on November 22, 1989, divorcing petitioner and James Little. The judgment of dissolution included the marital settlement agreement.

The judgment of dissolution required James Little to pay petitioner $5,253 per month in spousal support beginning November 1, 1989, and continuing until petitioner or James Little died, petitioner remarried or cohabited with an unrelated member of the opposite sex for more than 30 consecutive days, or January 1, 2009, whichever occurred first.

The marital settlement agreement required petitioner to sign a $69,336 promissory note with a 9-percent annual interest rate to James Little for her one-half of a line of credit with Security Pacific Bank. Under the promissory note, petitioner was required to pay James Little $1,329 per month with payments credited first to interest and second to principal. The judgment of dissolution gave joint custody of Christina to petitioner and James Little, gave physical custody of Christina to petitioner, and gave reasonable visitation rights to James Little. The judgment of dissolution required James Little to pay child support of $1,739 per month to petitioner from November 1, 1989, until further order of the court, Christina's death, her marriage

or emancipation, her reaching age 19, or her reaching 18 and no longer being a full-time high school student living with a parent, whichever came first.

The marital settlement agreement prohibited James Little from taking any offsets or credits against his child support payments to petitioner. The judgment of dissolution provided that if petitioner remarried before child support ended by operation of law, child support would automatically increase to $3,000 per month.

Christina was 15 years old and lived with petitioner on November 22, 1989, when her parents divorced. James Little remarried in January 1990. Christina lived with James Little from mid-February to early April 1990.

Petitioner met Larick Hill in 1986. She first considered marrying him late in 1989 or early in 1990. Under the marital settlement agreement, James Little would no longer have to pay petitioner the $5,253 per month in spousal support if she remarried.

D.   Negotiations To Change the Marital Settlement Agreement

In the spring or summer of 1990, petitioner and James Little began to negotiate changes to the judgment of dissolution. Petitioner and James Little discussed modifying the spousal support provision in the marital settlement agreement. James Little offered to remove a financial impediment to petitioner's

remarriage by proposing that spousal support payments continue for a period of time after she remarried. Petitioner proposed that James Little make the payments for 36 months. James Little offered to extend the payments for 18 months. Petitioner asked James Little to put his proposal in writing. On July 9, 1990, James Little wrote the following in a letter to petitioner:

We have two outstanding issues. They are:

1. The appropriate adjustment to child support payments effective August 1, 1990.

2. Proposed adjustments to the Marital Separation Agreement should you remarry prior to September 30, 1990.

Regarding item 1, to save both you and I legal expense, I would be prepared to try an interim adjustment between you and I as follows:

On the 5th of each month, beginning August 5, 1990, you will pay me $1,400.00, in the form of a cashier's check, as reimbursement for child support expenses.

If we make an adjustment to the spousal support agreement, as contemplated in item 2, we could also formalize the child support changes in the documents we file with the court. Please be advised that if this temporary child support solution is unacceptable, I will have to seek relief for the child support payments through the judicial process. May I hear from you regarding the child support issue by Saturday, July 14, 1990?

The following is my proposal covering adjustments to the Marital Separation Agreement referenced as item 2:

A. Fawni acknowledges JEL has 90+% physical custody of CNL.

B. JEL child support payments to FLL terminate.

C.   JEL waives child support payments from FLL.

D.   If FLL remarries before September 30, 1990, on the date of her marriage her debt to JEL is forgiven and JEL will then pay $4,000.00 per month spousal support through January 31, 1992 unless child support payments by JEL for CNL are resumed for any reason.

E.   If child support payments are resumed after FLL has remarried, the $4,000 per month shall be reduced by 1.55 times the amount of child support.

F.   JEL life insurance/annuity obligation to FLL to cease upon FLL remarriage.

Petitioner and James Little lived a mile apart when James Little sent his written proposal.  On July 11, 1990, petitioner responded to James Little's letter as follows:

This is in response to your letter to me of yesterday regarding child support and spousal support.

Item 1.  Commencing August 1, 1990, child support can be adjusted to reflect JEL having physical custody (80%) under the following conditions:

A.   FLL receives a letter from Christina stating that she wishes to reside primarily with JEL until age 18.

B.   Child support payments to FLL to be based on 20% custody at JEL's current compensation rate for the same duration as specified in the MSA, due on the 1st of each month, or promissory note to JEL to be forgiven.

C.   All legal expenses related to the above transactions to be the sole responsibility of JEL, including but not limited to reversing the above should Christina wish to change her primary residence prior to age 18.

D.   JEL will assume 100% responsibility for Christina's educational expenses as well as medical and dental expenses.

OR

Item 2:    With regard to a spousal support adjustment
if FLL remarries prior to 30 September 1990, the
following conditions are to be accepted:

A.    Upon receipt of a letter from Christina
stating her desire to reside primarily with JEL,
FLL to acknowledge that JEL has physical custody
of Christina until such time as Christina reaches
18 or reverses her decision, whichever comes
first.

B.    Child support to cease with the clear
understanding that JEL will be responsible for
100% of Christina's educational expenses as well
as medical and dental expenses.

C.    N/A

D.    1.    N/A  The debt is forgiven automatically
in the event of remarriage per MSA.

2.    JEL to pay FLL adjusted spousal support
on the 1st of each month following FLL's
remarriage in the amount of not less than $3,000
net to Fawni based on her tax bracket (33+9%) not
JEL's. (28%) through May 31, 1992.  JEL to provide
all legal expenses associated with this
modification to the MSA.

E.    Should Christina desire to change her primary
residence prior to age 18, the amount of
spousal/child support will be determined by JEL's
compensation at that time, but will not be less
than the amount of spousal support paid to FLL
following remarriage.  JEL will be responsible for
all legal expenses associated with such change,
should it occur.

F.    JEL's life insurance obligation to FLL will
cease and he will provide Christina with a minimum
of $500,000 life insurance until age 25.

G.    The necessary legal work to accomplish the
above is completed and accepted prior to 20 July
1990.

Petitioner wrote the counterproposal without consulting with her lawyer.

E.    Modification of Judgment of Dissolution

Petitioner and James Little discussed a stipulation to modify the marital settlement agreement after writing the letters.  Sheldon Lodmer, James Little's divorce attorney, and John Carter, James Little's accountant and financial adviser, drafted a stipulation to modify the marital settlement agreement. Petitioner's attorney reviewed it late in July 1990.  Petitioner told her attorney that she wanted to protect Christina's standard of living.  Petitioner's attorney told her that it was alright to sign it.  Petitioner had an accountant at the time, but did not ask him to review the stipulation.  Petitioner reviewed the stipulation before she signed it.

On August 1, 1990, the Superior Court for the County of San Mateo filed petitioner and James Little's "Stipulation Re Modification of Judgment of Dissolution of Marriage, Entered November 22, 1989" (stipulation re modification of judgment of dissolution), which provided:

> 1.   All child support payments by Respondent, pertaining to the minor, CHRISTINA NOEL LITTLE, born December 21, 1973, as indicated in Paragraph III(A) of the aforementioned Judgment, shall terminate on August 1, 1990.  Petitioner acknowledges that Respondent has physical custody of said minor more than 90% of the time.
>
> 2.   In the event that Petitioner remarries prior to August 30, 1990, the spousal support shall be

reduced to $4,000 per month and shall continue through January 31, 1992, at which time all spousal support shall terminate and the Court shall not retain jurisdiction to extend the same. Except as hereinafter indicated, this spousal support order is non-modifiable.

(A) The foregoing notwithstanding, in the event that child support payments are resumed by Respondent to Petitioner after Petitioner remarries, the amount of spousal support paid by Respondent shall be reduced by 1.55 times the amount of said child support, up to a maximum reduction of $4,000.00 per month.

3. The life insurance obligation of Respondent referenced in Paragraph I(B) of the Judgment of Dissolution of Marriage shall terminate upon Petitioner's remarriage.

At the time of the negotiations that led to the adoption of the stipulation re modification of judgment of dissolution, petitioner was interested in remarrying, especially when Christina lived with her father. Petitioner did not believe that Christina would live with James Little for a long time.

Petitioner and Larick A. Hill were married on August 10, 1990.

Christina returned to live with petitioner around October 1990, and remained there throughout the years in issue. James Little moved to Southern California on January 5, 1991. Christina visited him there about six times per year. She was there 3 to 7 days per visit. Christina graduated from high school in the spring of 1991. In the summer of 1991, after

she graduated from high school, Christina worked as a receptionist/typist.  She earned more than $3,000.

Christina began attending college full time at the University of Oregon in September 1991.  Petitioner and James Little each paid one-half of Christina's college tuition for the 1991-92 school year.

Under the judgment of dissolution, James Little paid spousal support to petitioner of $36,771 and child support of $12,173 from January 1, 1990, to July 31, 1990.  Under the stipulation re modification of judgment of dissolution, James Little paid spousal support to petitioner of $20,000 from August 1 to December 31, 1990, and $48,000 in 1991.

Petitioner reported that she received alimony of $28,000 in 1990.

OPINION

A.    Contentions of the Parties

James Little made 17 $4,000 monthly payments from August 1, 1990, to January 31, 1992, as required by the stipulation re modification of judgment of dissolution.  We must decide whether those amounts are alimony as respondent contends or child support or other nonalimony payments as petitioners contend.

B.    Background

Alimony is taxable to the recipient and is deductible by the payor.  Secs. 71(a), 215(a).  Alimony payments are not child support payments.  Sec. 71(c).  Child support payments are neither includable in income under section 71 nor deductible under section 215.  Child support is that part of a payment which the divorce instrument fixes as payable for the support of the children of the payor spouse.  Sec. 71(c)(1).  An amount is treated as fixed under section 71(c)(1) if it will be reduced "on the happening of a contingency specified in the [divorce] instrument relating to a child (such as attaining a specified age, marrying, dying, leaving school, or a similar contingency)," sec. 71(c)(2)(A), or "at a time which can clearly be associated with a contingency of a kind specified in subparagraph (A)," sec. 71(c)(2)(B).

The parties agree that this case should be decided by applying section 72(c)(2)(B) and section 1.71-1T(c), Q&A-18, Temporary Income Tax Regs., 49 Fed. Reg. 34457 (Aug. 31, 1984).[2]

_____

[2] Sec. 1.71-1T(c), Q&A-18, Temporary Income Tax Regs., 49 Fed. Reg. 34457 (Aug. 31, 1984), provides:

> Q-18.  When will a payment be treated as to be reduced at a time which can clearly be associated with the happening of a contingency relating to a child of the payor?

> A-18.  There are two situations, described below,
(continued...)

---

[2](...continued)
in which payments which would otherwise qualify as alimony or separate maintenance payments will be presumed to be reduced at a time clearly associated with the happening of a contingency relating to a child of the payor.  In all other situations, reductions in payments will not be treated as clearly associated with the happening of a contingency relating to a child of the payor.

The first situation referred to above is where the payments are to be reduced not more than 6 months before or after the date the child is to attain the age of 18, 21, or local age of majority.  The second situation is where the payments are to be reduced on two or more occasions which occur not more than one year before or after a different child of the payor spouse attains a certain age between the ages of 18 and 24, inclusive.  The certain age referred to in the preceding sentence must be the same for each such child, but need not be a whole number of years.

The presumption in the two situations described above that payments are to be reduced at a time clearly associated with the happening of a contingency relating to a child of the payor may be rebutted (either by the Service or by taxpayers) by showing that the time at which the payments are to be reduced was determined independently of any contingencies relating to the children of the payor.  The presumption in the first situation will be rebutted conclusively if the reduction is a complete cessation of alimony or separate maintenance payments during the sixth post-separation year (described in A-21) or upon the expiration of a 72-month period.  The presumption may also be rebutted in other circumstances, for example, by showing that alimony payments are to be made for a period customarily provided in the local jurisdiction,
(continued...)

Payments which would otherwise qualify as alimony are presumed to be child support if they are reduced within 6 months of the child's 18th or 21st birthday or legal age of majority.  Sec. 1.71-1T(c), Q&A-18, Temporary Income Tax Regs., supra. Respondent concedes that the payments at issue are presumed to be child support under the temporary regulations because the stipulation re modification of judgment of dissolution eliminated alimony on January 31, 1992, which was within 6 months of December 21, 1991, Christina's 18th birthday.

---

[2](...continued)
such as a period equal to one-half the duration of the marriage.

Example:  A and B are divorced on July 1, 1985, when their children, C (born July 15, 1970) and D (born September 23, 1972), are 14 and 12, respectively. Under the divorce decree, A is to make alimony payments to B of $2,000 per month.  Such payments are to be reduced to $1,500 per month on January 1, 1991 and to $1,000 per month on January 1, 1995.  On January 1, 1991, the date of the first reduction in payments, C will be 20 years 5 months and 17 days old.  On January 1, 1995, the date of the second reduction in payments, D will be 22 years 3 months and 9 days old.  Each of the reductions in payments is to occur not more than one year before or after a different child of A attains the age of 21 years and 4 months.  (Actually, the reductions are to occur not more than one year before or after C and D attain any of the ages 21 years 3 months and 9 days through 21 years 5 months and 17 days.)  Accordingly, the reductions will be presumed to clearly be associated with the happening of a contingency relating to C and D.  Unless this presumption is rebutted, payments under the divorce decree equal to the sum of the reductions ($1,000 per month) will be treated as fixed for the support of the children of A and therefore will not qualify as alimony or separate maintenance payments.

C.    <u>Whether Respondent Rebutted the Presumption Under Section
      1.71-1T(c), Q&A-18, Temporary Income Tax Regs., That the
      Payments Are Child Support</u>

Petitioners contend that there was no evidence introduced at trial to rebut the presumption.[3]  We disagree.

Section 1.71-1T(c), Q&A-18, Temporary Income Tax Regs., <u>supra</u>, provides that the taxpayer or the Commissioner may rebut the presumption "by showing that the time at which the payments are to be reduced was determined independently of any contingencies relating to the children of the payor."  Respondent has done so by showing that the parties chose January 31, 1992, as part of eliminating a financial impediment to petitioner's remarriage and that it is purely coincidental that January 31, 1992, is within 6 months of Christina's 18th birthday.

Petitioner testified that the modification gave her a financial incentive to remarry.  The stipulation re modification of judgment of dissolution does not refer to Christina's 18th birthday, and, by its terms, it ends her child support.  The parties apparently did not discuss Christina's 18th birthday when they negotiated the stipulation re modification of judgment of dissolution.  James Little testified as follows:

---

[3] Petitioners also contend that respondent determined that the payments at issue here are alimony because respondent allowed James Little to deduct the amounts in issue in a year that is closed by the statute of limitations.

Q     The date that was agreed upon for the duration of the spousal support payments was January 31st, 1992.  How was that date agreed upon?

A     My recollection is, like most items in this, it was a negotiated settlement.  And her -- Mrs. Hill's original request was for thirty-six months.  And there was some dialogue back and forth which I don't remember the specifics on, but we finally -- my position was to split the difference, and that's what it's going to be.

Petitioner testified as follows:

Q     Did you ever discuss with him why that particular -- why he chose that particular date?

A     It wasn't a date that he really chose.  We had discussed over the phone during these several conversations sort of a timeframe.  And thinking about Christina become -- becoming eighteen, I wanted it to at least cover that period of time.  Christina was very young.  She was graduating from high school at age seventeen.  At that point I didn't know if she was going to be going away to college her first year.

              *    *    *    *    *    *    *

And I wanted to be -- to have a lifestyle for her that she would be comfortable with, should I remarry.

              *    *    *    *    *    *    *

I wasn't concerned about having compensation for myself for eighteen months or five years or twenty years.  It was for Christina.  It was for Christina's expenses.

Petitioner testified that she told her divorce attorney that she wanted to have funds to support Christina until she became 18.

Petitioner's and James Little's testimony shows that they negotiated how long James Little would pay spousal support to petitioner after she remarried.  James Little did not say whether

he considered Christina's 18th birthday. Petitioner said that she considered Christina's 18th birthday. Neither petitioner nor James Little testified that they discussed Christina's birthday with each other. The stipulation re modification of judgment of dissolution does not say that the parties considered Christina's 18th birthday. We conclude that the fact that January 31, 1992, was within 6 months of Christina's 18th birthday was a coincidence, and was not a contingency related to Christina. Thus, the payments at issue are not presumed to be child support.

Our conclusion is consistent with the labels used by the parties in the written agreement. The stipulation re modification of judgment of dissolution states: "In the event that Petitioner remarries prior to August 30, 1990, the spousal support shall be reduced to $4,000 per month and shall continue through January 31, 1992." The parties agreed to end child support payments made by James Little.

The stipulation re modification of judgment of dissolution states: "All child support payments by * * * [Little] shall terminate on August 1, 1990." Petitioner was represented by counsel who reviewed the document and said it was alright for petitioner to sign it. Christina lived with James Little when he and petitioner negotiated the stipulation re modification of judgment of dissolution. The words petitioner and James Little chose fit the substance of the arrangement that existed at the time.

Petitioners contend that the stipulation re modification of judgment of dissolution is ambiguous. Petitioners point out that the stipulation re modification of judgment of dissolution contains a formula which, if child support is resumed later, reduces spousal support by 1.55 times the amount of any child support. This provision does not lead us to conclude that payments made before child support resumes are child support. The stipulation re modification of judgment of dissolution clearly states that the payments at issue are spousal support and that child support ended on August 1, 1990.

Petitioners contend that respondent must show that petitioner and James Little chose the termination date based on a specific event in Christina's or James Little's life other than her 18th birthday. We disagree. Section 1.71-1T(c), Q&A-18, Temporary Income Tax Regs., 49 Fed. Reg. 34457 (Aug. 31, 1984), does not require that payments terminate based on a specific event to overcome the presumption that payments which terminate within 6 months of a child's 18th birthday are child support. It provides that a party may overcome the presumption by showing that the date the payments are to be reduced was chosen independently of any contingencies relating to the children. Respondent has done so by showing that it is merely a coincidence that January 31, 1992, was within 6 months of Christina's 18th birthday.

Petitioners contend that respondent erroneously relied on the fact that James Little had primary physical custody of Christina when he and petitioner agreed to the stipulation re modification of judgment of dissolution. Petitioners argue that this was an error because the obligation to pay child support in California does not always depend on who has primary physical custody if the noncustodial spouse lacked resources to adequately care for the child. See In re Marriage of Katz, 201 Cal. App. 3d 1029, 1038-1039 (1988). We disagree that we may not consider the fact that James Little had primary physical custody of Christina. In California, a parent generally meets his or her child support obligation by maintaining custody of the child. In re Marriage of Rasmussen, 155 Cal. App. 3d 805, 812 (1984). Petitioner has not shown that she lacked resources to adequately care for Christina similar to the example given by the court in In re Marriage of Katz, supra. The fact that James Little had physical custody is not dispositive, but we believe it is relevant to deciding whether he and petitioner intended the payments at issue to be child support.

Petitioners contend the stipulation re modification of judgment of dissolution must be construed against James Little because his advisers drafted it. Cal. Civil Code sec. 1654 (West 1985); 2 Restatement, Contracts 2d, sec. 206 (1981); 4 Williston, A Treatise on the Law of Contracts, sec. 621 (3d ed. 1961). We disagree. An agreement is construed against its

drafters only to resolve ambiguities in the agreement. Williston, supra. The stipulation re modification of judgment of dissolution clearly states that the payments at issue are spousal support and that child support ends.

Petitioners contend that we should not rely on the language in the stipulation re modification of judgment of dissolution because petitioner had much less educational and business background than James Little. We disagree. Petitioner and her attorney reviewed the stipulation re modification of judgment of dissolution before they signed it. Petitioner has a bachelor's degree and business experience.

We conclude that respondent has rebutted the presumption that the payments at issue are child support.

D.    Whether the Payments at Issue Are Alimony

Petitioners contend that, even if respondent rebuts the presumption that the payments at issue are child support, they are not alimony under section 71(b). We disagree.

Petitioners bear the burden of proving that respondent's determination that the payments at issue are alimony is incorrect. Rule 142(a). Alimony is any payment in cash if:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Sec. 71(b)(1).

The payments at issue meet each of these requirements. First, petitioner received payments under a divorce or separation agreement. Second, the stipulation re modification of judgment of dissolution does not state that petitioner need not include the payments in gross income or that James Little may not deduct the payments. Third, petitioner and James Little lived apart when James Little made the payments at issue. Fourth, the provision in the judgment of dissolution that payments were to terminate when petitioner or James Little died was not modified by the stipulation re modification of judgment of dissolution. The stipulation re modification of judgment of dissolution states: "the spousal support shall be reduced to $4,000 per month and shall continue through January 31, 1992". The modification relates to the marital settlement agreement. The judgment of dissolution provides that spousal support terminates if petitioner or James Little dies. The stipulation re modification of judgment of dissolution did not change this

clause.  Thus, the payments at issue meet all of the requirements for alimony.  Sec. 71(b)(1).

Petitioners contend that James Little was required to continue the payments through January 31, 1992, even if petitioner or James Little died before that date.  We disagree. The stipulation re modification of judgment of dissolution did not modify the provision in the judgment of dissolution that spousal support payments were to terminate when petitioner or James Little died.

Petitioners assert that James Little's testimony shows that the stipulation re modification of judgment of dissolution had that effect.  We disagree.  James Little said:

> Q    * * *  As part of your understanding of the modification agreement, do you think that your obligation to pay the $4,000 a month would have terminated, had Mrs. Hill died prior to January 31st of 1992?  Do you still have the agreement?
>
> A    Uh-huh.
>
> Q    Do you need a copy?
>
> A    I would have assumed so.  We probably would have had to go back to court, but I would have assumed it would have stopped.
>
> Q    But you're not saying that from anything you find in the modification agreement; you're just assuming?
>
> A    Yes.
>
> Q    What do you assume would have happened to those $4,000 a month payments had Christina died before January 31st, 1992?
>
> A    Nothing.

Q    Do you have any idea whether your estate
would have been obligated to continue the $4,000 a
month payments required by that modification had you
died prior to December 31st of 1992?

A    I don't recall specifically having talked
about that subject; no.  And I'm not qualified to
speculate.

Q    Well, I'm mostly asking whether you find it
in the agreement.  I don't want you to speculate.

A    Oh.  It's not in the agreement.

This testimony does not establish or even suggest that his estate would have been required to continue making payments until January 31, 1992, if he had died before then.

Petitioners contend that, if respondent rebuts the presumption, then the payments were neither alimony nor child support.  Petitioners give no reason that the amounts at issue are not alimony except to restate their belief that the payments at issue do not terminate when petitioner or James Little dies. We conclude that the payments at issue are alimony for purposes of sections 71(a) and 215(a).

Petitioners contend that the payments at issue are not alimony because petitioner and James Little orally agreed to modify the stipulation re modification of judgment of dissolution in October 1990.  We disagree.

Petitioners' contention is inconsistent with their 1990 tax return on which they reported that petitioner received $28,000 in alimony.  Under petitioners' contention, petitioner would have received $44,771 in alimony in 1990.

Petitioner testified that James Little told her on the telephone that they could treat the payments at issue as child support. James Little denied that he said that. Petitioner and James Little communicated in writing when dealing with important financial matters. We think it is highly unlikely that they would have orally agreed to this change. We conclude that petitioner and James Little did not orally modify the stipulation re modification of judgment of dissolution.

Petitioners contend that the $4,000 per month payments at issue were child support payments because the child support payment requirements in the judgment of dissolution were not changed by the stipulation re modification of judgment of dissolution. We disagree.

The stipulation re modification of judgment of dissolution provided that child support payments by James Little pursuant to paragraph III(A) of the judgment of dissolution would terminate on August 1, 1990. Thus, the stipulation re modification of judgment of dissolution changed James Little's child support requirements by ending his obligation to pay child support to petitioner of $1,739 per month.

To reflect concessions and the foregoing,

Decision will be

entered under Rule 155.